J-S07007-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYKIVIOUS JAMAL BROWN | : | |
| | : | |
| Appellant | : | No. 889 MDA 2025 |

Appeal from the Judgment of Sentence Entered June 5, 2025
In the Court of Common Pleas of Perry County Criminal Division at
No(s): CP-50-CR-0000445-2024

BEFORE: BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:         **FILED: APRIL 9, 2026**

Tykivious Jamal Brown appeals from the aggregate judgment of sentence of nine to twenty years of incarceration imposed after a jury found him guilty of aggravated assault, endangering the welfare of a child ("EWOC"), and recklessly endangering another person ("REAP"). We affirm.

We glean the following from the certified record. On October 16, 2024, Cheyenne Cooper ("Mother"), the mother of then-four-month-old C.B., dropped C.B. and his one-year-old sister off at Appellant's residence so Mother could attend an out-of-state work training for several days. Appellant is their father. At the time, Appellant was staying at the home his brother, Isaiah Brown, shared with his girlfriend. Appellant texted Mother throughout that week, exhibiting increased frustration and aggressiveness towards her and the children, particularly with being the children having colds when they

arrived and Appellant being unable to calm C.B. when he was crying and unable to sleep.

Additionally, Appellant advised Mother that C.B. had sustained a bruise on his head, though his story changed as to whether that was due to a shelf falling and hitting him on the head, his sister throwing a phone that hit him, or a can of iced tea falling on him from the shelf. After seeing the bruise during a video call, Mother did not believe C.B. was seriously injured.

However, when Mother arrived on October 24, "C.B.'s body was limp, [his] overall demeanor was lethargic, [he was] lacking engagement and response, and he seemed to be unaware of his surroundings." Trial Court Opinion, 9/22/25, at 4 (citation omitted). After securing independent care for her daughter and consulting the pediatrician by phone, Mother took C.B. to UPMC Harrisburg. However, he was thereafter transported to Hershey Medical Center to treat fluid on his brain. Due to his young age, some of the injuries were difficult to ascertain and his prognosis remains uncertain, but it was confirmed that he had fluid on his brain and spine, retinal hemorrhaging, and loss of peripheral vision. Ultimately, it was determined that C.B. had suffered a subdural hematoma and shearing injury resulting from an acceleration-deceleration movement, often referred to as shaken baby syndrome in laymen's terms. As a result, he will have a permanent shunt in his brain to drain the excess fluid.

Appellant authored two letters after the incident, one to C.B. and one to Mother. His letter to C.B. accepted fault, stating in pertinent part:

> I'm your father.  I know you will never understand and I'm beyond sorry for all that you have to deal with and go through in life. Everything is my fault.  And don't think for a second you were born different. You were really strong. You were a healthy, strong young man.  Daddy just didn't protect you the way he should.

N.T. Trial, 4/22/25, at 59 (Exhibit 3).  To Mother, Appellant admitted that he could "never ask for forgiveness" and he did not "deserve to be a father or have the title of their father."  *Id*. at 62 (Exhibit 4).

Based on the foregoing, Appellant was charged with aggravated assault, EWOC, and REAP.  At his ensuing jury trial, the Commonwealth presented testimony from Mother; Sylvia Guerras, the emergency resident at UPMC Harrisburg who first assessed C.B.; Kathryn McCans, M.D., an expert in child abuse pediatrics and pediatric emergency medicine, who also evaluated C.B. at Hershey Medical Center; and Pennsylvania State Trooper Tré Nelson. Appellant testified in his defense, maintaining his innocence, that he did not shake C.B., that any injuries stemmed from items falling off the shelf and claiming, "I don't believe I caused any injuries intentionally[.]"  *Id*. at 153. He was not asked about the letters he wrote to C.B. and Mother.  In furtherance of his defense, Appellant also called Mr. Brown and a friend he had visited with the children while they were in his care that week.  Both attested that they did not observe Appellant being aggressive towards the children and that C.B. did not appear injured.  Mr. Brown confirmed he was not present at the time of the shelf incident.

At the conclusion of the trial, the jury found Appellant guilty of aggravated assault, EWOC, and REAP.  After securing a pre-sentence

- 3 -

investigation report, the trial court sentenced Appellant to consecutive terms of incarceration of seven to sixteen years for aggravated assault and two to four years for EWOC. Finding that REAP merged with EWOC, the court did not impose a sentence on that count. Appellant did not file a post-sentence motion.

This timely appeal followed. Appellant complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement.[1] The court authored a responsive Rule 1925(a) opinion. In this Court, Appellant presents a single issue for our resolution: "Was the jury's verdict against the weight of the evidence in that the Commonwealth failed to present sufficient evidence as to each element of the crime of aggravated assault and causation of injuries as well as [EWOC]?" Appellant's brief at 6.

Preliminarily, we observe that Appellant appears to have conflated the distinct challenges to the weight and sufficiency of the evidence presented. *See Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (distinguishing weight and sufficiency claims based upon the relief granted and the applicable scopes and standards of review). For example, his brief initially sets forth the standard of review for sufficiency of the evidence, but his argument centers on whether the verdict was against the weight of the

_____

[1] We remind the trial court that all Rule 1925(b) orders must include "that the Statement shall be filed of record[,]" as well as "both the place the appellant can serve the Statement in person and the address to which the appellant can mail the Statement." Pa.R.A.P. 1925(b)(3)(ii)-(iii).

evidence. **_Compare_** Appellant's brief at 5 (section entitled "Sufficiency of the Evidence") **_with id_**. at 11-21 (arguing the weight of the evidence).

In his argument section, Appellant insists that he did not cause the injuries to C.B. He instead shifts the blame elsewhere by emphasizing that it is unknown what occurred in the hours between when Mother picked up the children from his home and took C.B. to the hospital. **_Id_**. at 12-18. He contends "that given the lag in time as well as [his] denial that he caused any injuries, the Commonwealth did not meet the burden of beyond a reasonable doubt as [to] the elements required in the aggravated assault or [EWOC]." **_Id_**. at 21 (some capitalization altered). He maintains:

> The sense of justice in this matter is shocked by the inconsistency in . . . Mother's testimony, having the urgency to call the doctor and being told to take the child to the hospital, but waiting hours later to do so. The inconsistency is major in the eyes of . . . Appellant and stacked immeasurably to show that one's sense of justice should be shocked.

**_Id_**. at 19 (some capitalization). Ultimately, he summarizes his argument by "aver[ring] that the evidence/testimony did not support the jury's verdict beyond a reasonable doubt and that the jury's verdict rendered shock's [*sic*] one [*sic*] sense of justice given the beyond a reasonable doubt standard required for conviction." **_Id_**. at 21.

Citing jurisprudence relating to the weight of the evidence, Appellant asks us to credit his testimony denying any intentional injury to C.B. over that of Mother and the abundant circumstantial evidence establishing that Appellant purposefully subjected C.B. to an acceleration-deceleration event

that caused him serious bodily injury. Thus, while he confuses some of the terminology and caselaw throughout his brief, it is apparent from the argument section that he is challenging the weight of the evidence as to his aggravated assault and EWOC convictions. *See Commonwealth v. Juray*, 275 A.3d 1037, 1043 (Pa.Super. 2022) (explaining that arguments regarding the assessment of credibility "are more properly characterized as challenges to weight of evidence" than to sufficiency, and any purported sufficiency challenge "must fail, where an appellant phrases an issue as a challenge to the sufficiency of the evidence, but the argument that the appellant provides goes to the weight of the evidence" (cleaned up)).

Our standard of review for weight claims is well-settled:

The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Hill*, 348 A.3d 264, 280–81 (Pa.Super. 2025) (cleaned up). Critically, a defendant must preserve a weight claim in the trial court in the following manner:

> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
> > (1) orally, on the record, at any time before sentencing;
> >
> > (2) by written motion at any time before sentencing; or
> >
> > (3) in a post-sentence motion.

Pa.R.Crim.P. 607.

Appellant did not challenge the weight of the evidence prior to sentencing, either orally or by written motion, nor did he file a post-sentence motion. Although he raised a weight claim in his Rule 1925(b) statement and the court addressed it in its opinion, that is insufficient to preserve the issue for appellate review. *See Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009). As our Supreme Court has explained,

> Appellant's failure to challenge the weight of the evidence before the trial court deprived that court of an opportunity to exercise discretion on the question of whether to grant a new trial. Because appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence, this Court has nothing to review on appeal.

*Id*.

Since Appellant failed to raise a weight claim in the trial court, there is no discretion for us to review. Accordingly, we conclude that Appellant has waived the sole issue he raises on appeal by failing to preserve it first in the

trial court.  Having no cause to disturb his judgment of sentence, we affirm.

*Id*.

Judgment of sentence affirmed.


Judgment Entered.

![signature: Benjamin D. Kohler]

Benjamin D. Kohler, Esq.
Prothonotary


Date: 04/09/2026